IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

BRANCH BANKING AND TRUST
COMPANY,

   Plaintiff,

     v.

MITCHELL F. COOKE,

   Defendant.

CIVIL ACTION FILE
NO. 1:16-CV-4102-TWT

**OPINION AND ORDER**

This is an action to enforce a personal guaranty. It is before the Court on the Plaintiff Branch Banking and Trust's ("BB&T") Motion for Summary Judgment [Doc. 22] and the Defendant Mitchell Cooke's Motion to Strike Certain Portions of the Declaration of La'Torrie Williams [Doc. 25]. For the reasons stated below, BB&T's Motion for Summary Judgment [Doc. 22] is GRANTED and Cooke's Motion to Strike [Doc. 25] is DENIED.

**I. Background**

On June 7, 2006, DHSS Properties, LLC signed a promissory note (the "Original Note") under seal in exchange for a loan of $5,823,725.00 from Main Street

Bank.[1] The Plaintiff BB&T subsequently acquired Main Street Bank, along with the Original Note, which was secured by real property located in Marietta, Georgia.[2] When the Original Note matured on May 7, 2009, DHSS had not paid off the balance and was in danger of falling into default. BB&T agreed to modify the Original Note extending the due date to July 7, 2009,[3] but in exchange, BB&T required that the Defendant Mitchell Cooke sign a personal guaranty (the "Guaranty").[4]

The Guaranty contains a number of provisions in which the Defendant agreed to waive certain defenses and to take on primary responsibility for the debt. In particular, the Defendant agreed to waive "the defense of the statute of limitations in any action hereunder," as well as "any other legal or equitable defenses whatsoever to which the undersigned might be entitled, to the extent permitted by law, unless such defenses are based upon the willful misconduct of the Bank."[5]

---

[1] Stat. of Undisputed Mat. Facts in Supp. of Pl.'s Mot. for Summ. J. ¶ 1.

[2] Id. at ¶¶ 4, 7.

[3] The Modified Note was also for a slightly less amount than the Original Note. The Modified Note was for an amount of $5,823,450.00. The Court assumes that the Plaintiff's references to the previous amount of $5,823,725.00, as contained in the Original Note, are simply typographical errors.

[4] Id. at ¶ 8. Cooke executed the Guaranty under seal on May 7, 2009.

[5] Id. at ¶ 9.

DHSS and Cooke eventually defaulted on the Note and Guaranty, respectively, by failing to pay the Note in full on its new maturity date of July 7, 2009.[6] BB&T foreclosed on the property securing the Note and sold it at auction to one of its wholly-owned subsidiaries, Atlas NC I SPE, LLC, for a credit bid of $5,260,000.00.[7] BB&T credited the sale price against the principal amount of the indebtedness owed by DHSS and Cooke as of the foreclosure sale.[8] BB&T commenced a confirmation action in the Superior Court of Cobb County, Georgia, but dismissed it in July after Atlas sold the property for $3,900,000.00 on June 16, 2010.[9]

Over six years later, BB&T filed its Complaint for Damages against Cooke on November 2, 2016.[10] The Complaint seeks the remaining principal balance on the note of $563,450.00;[11] accrued interest of $422,940.03; *per diem* interest after June 2, 2017

---

[6] Id. at ¶ 11.

[7] Id. at ¶¶ 12-13. The Defendant disputes that the sale was proper, arguing that Atlas had no authority to submit a credit bid because it was never owed anything. This may be true, but as described later in the Court's Order, the Defendant waived any challenges to the sale.

[8] Id. at ¶ 14.

[9] Id. at ¶¶ 16-18.

[10] Id. at ¶ 19.

[11] Despite the Plaintiff's repeated typographical error regarding the principal amount on the Modified Note, the remaining principal balance is calculated correctly by subtracting the credit bid amount of $5,260,000.00 from the principal

through judgment in the amount of $82.17; fees of $5,494.34; and attorney's fees of $98,664.00 plus *per diem* interest after June 2, 2017 through judgment of $8.217.[12] BB&T now moves for summary judgment.

## II. Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law.[13] The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant.[14] The party seeking summary judgment must first identify grounds to show the absence of a genuine issue of material fact.[15] The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist.[16] "A mere 'scintilla' of evidence

---

amount on the Modified Note of $5,823,450.00.

[12] Id. at ¶¶ 24-27.

[13] FED. R. CIV. P. 56(a).

[14] Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970).

[15] Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

[16] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

supporting the opposing party's position will not suffice; there must be a sufficient showing that the jury could reasonably find for that party."[17]

### III. Discussion

"In a suit to enforce a promissory note, a plaintiff establishes a prima facie case by producing the note and showing that it was executed...Similarly, in a suit on a personal guaranty, when the signature is admitted or established, production of the instrument entitles the holder to recover on it unless the defendant establishes a defense."[18] In this case, both parties acknowledge that Cooke executed the Guaranty. Thus, BB&T has established a *prima facie* right to a recovery, and the burden shifts to Cooke to establish a valid defense.

**A. Affirmative Defenses**

In his Answer to the Complaint, Cooke asserted the affirmative defenses of: (1) laches, (2) statute of limitations, (3) illegality based on BB&T's dismissal of the Confirmation Action, (4) payment and satisfaction by foreclosure, (5) waiver, (6) estoppel, and (7) release.[19] Each of these defenses fails as a matter of law.

---

[17] Walker v. Darby, 911 F.2d 1573, 1577 (11th Cir. 1990).

[18] L.D.F. Family Farm, Inc. v. Charterbank, 326 Ga. App. 361, 363 (2014).

[19] Answer to the Compl. at 1-2 [Doc. 7].

**1. Laches**

The Defendant's first affirmative defense listed in his Answer is that the Plaintiff's action is barred by the doctrine of laches because of the significant gap in time between the Defendant's default and the commencement of this action. Under the doctrine of laches, "courts of equity may interpose an equitable bar whenever, from the lapse of time and laches of the complainant, it would be inequitable to allow a party to enforce his legal rights."[20] However, "[i]t is a longstanding and well-established rule that the doctrine of laches is an equitable defense which is not applicable to actions at law..."[21] Actions to recover amounts owed under personal guaranties and promissory notes, like this one, are actions at law.[22] Consequently, the defense of laches does not apply.

**2. Statute of Limitations**

The Defendant's second affirmative defense simply states that BB&T's claims are barred by the applicable statue of limitations. It goes without saying that before determining whether an action is barred by a statute of limitations, a court must first

---

[20] O.C.G.A. § 9-3-3.

[21] VATACS Grp., Inc. v. HomeSide Lending, Inc., 281 Ga. 50 (2006) overruled on other grounds by Marsh v. Clarke Cty. Sch. Dist., 292 Ga. 28 (2012).

[22] See Kenerly v. Bryant, 227 Ga. App. 746, 748 (1997) (The plaintiff's "action to recover on the nine notes constitute[d] an action at law.").

determine which statute actually applies. Written contracts are generally governed by a six-year statute of limitations in Georgia; but when an instrument is under seal, the limitation extends to twenty years.[23] "Under Georgia law, 'to constitute a sealed instrument, there must be both a recital in the body of the instrument of an intention to use a seal and the affixing of the seal or scroll after the signature.'"[24] The Guaranty contained the recital "Witness the signature and seal of each of the undersigned," and the word "seal" after the Defendant Cooke's signature, making the Guaranty an instrument under seal.[25] Since the Guaranty is an instrument under seal, it is governed by the twenty year statute of limitations contained in O.C.G.A. § 9-3-23. As the Plaintiff's action was commenced well within twenty years, whatever the point of accrual, the Plaintiff's action is not barred by the statute of limitations.[26]

---

[23] O.C.G.A. §§ 9-3-23, 24.

[24] Davis v. Daniels, 655 F. App'x 755, 757 (11th Cir. 2016) (quoting McCalla v. Stuckey, 233 Ga. App. 397, 398 (1998)).

[25] See Guaranty, Compl. Ex. B, at 3 [Doc. 1-2]; Scott v. Gaulding, 60 Ga. App. 306 (1939) ("Where note contained recital 'witness my hand and seal' and word 'seal' followed decedent's signature on face of note, as to decedent, note was a sealed instrument, and suit brought against him within 20 years after maturity was not barred by limitations.").

[26] Even if it was, the Defendant waived this defense in the Guaranty.

### 3. Remaining Affirmative Defenses

The Defendant's remaining defenses of illegality, payment and satisfaction by foreclosure, waiver, estoppel, and release also fail as a matter of law because they were effectively waived by the Defendant in the Guaranty. Under normal circumstances, Georgia law requires that a foreclosure sale be confirmed by the superior court of the county in which the sale was conducted before a deficiency judgment can be obtained.[27] This means that a lender must show evidence that it received a fair market value for the property before it can pursue a borrower for any balance remaining on a loan. However, this requirement can be contractually waived in advance by a guarantor.[28]

In addition to a number of specific waivers, the language of the Guaranty in this case states that Cooke agreed to waive "any other legal or equitable defenses whatsoever to which the undersigned might be entitled..."[29] Other courts have repeatedly held that identical or highly similar language constituted a waiver of the

---

[27] See O.C.G.A. § 44-14-161(a).

[28] See York v. RES-GA LJY, LLC, 300 Ga. 869 (2017); PNC Bank, National Ass'n v. Smith, 298 Ga. 818, 820-24 (2016).

[29] Guaranty, Compl. Ex. B, at 1 [Doc. 1-2].

confirmation requirement.[30] Based upon this language, and upon other courts' interpretation of similar language, the Court finds that Cooke waived any requirement for BB&T to first confirm the foreclosure sale.

Cooke's remaining affirmative defenses ultimately derive from his argument that BB&T should have confirmed the foreclosure sale. Because Cooke waived the confirmation requirement, any defenses based upon that requirement were also waived. Thus, Cooke's remaining defenses of illegality, payment and satisfaction by foreclosure, waiver, estoppel, and release fail as a matter of law.[31]

**B. Damages**

Though the Defendant asserts the various affirmative defenses addressed above in his Answer, he does not spend any time addressing them in his Response. Instead, the majority of the Defendant's Response consists of arguing that BB&T has not sufficiently proved its damages. Rather than directly challenging the Defendant's

---

[30] See, e.g., Francis v. Branch Banking & Trust Co. (In re Francis), No. 16-05118 (Bankr. N.D. Ga. Oct. 18, 2016); In re Brooks, No. 13-10860, 2016 WL 1376354, at *4 (Bankr. S.D. Ga. Mar. 31, 2016); PNC Bank, 298 Ga. at 819; Cmty. & S. Bank v. DCB Investments, LLC, 328 Ga. App. 605, 612 (2014); HWA Properties, Inc. v. Cmty. & S. Bank, 322 Ga. App. 877, 886 (2013).

[31] Likewise, Cooke's brief argument in his Response that the foreclosure sale was improper because Atlas was not the holder of the debt, and thus could not submit a credit bid, fails because he waived any defenses based on the foreclosure sale other than satisfaction.

damages calculations, however, the Defendant instead argues that BB&T's evidence is inadmissible.

These arguments are mere reiterations of the Defendant's arguments in its Motion to Strike Certain Portions of the Declaration of La'Torrie Williams [Doc. 25]. Motions to strike, however, are only appropriate for pleadings.[32] As the Williams Declaration is not a pleading, the Defendant's Motion to Strike must be denied. Nevertheless, the Court will not consider any inadmissible testimony.

Based on the record, the Court finds that BB&T has provided "sufficient evidence regarding [BB&T's] calculation of damages to allow the Court to calculate the amount of the loss to a reasonable degree of certainty."[33] Cooke, meanwhile, offers no contradictory evidence of damages, other than his generally vague disagreement with BB&T's calculation. As such, the Court finds that there is no meaningful dispute about the amount of damages, and that BB&T is owed $563,450.00 in remaining principal, $422,940.03 in accrued interest, $5,494.34 in fees, and *per diem* interest of $82.17 from June 3, 2017 until the date of this Order.

---

[32] See Alyshah v. Hunter, No. 1:06-CV-0931-TWT, 2006 WL 2644910, at *3 (N.D. Ga. Sept. 13, 2006) (denying motion to strike nonpleading).

[33] Branch Banking and Trust Co. v. Meng, No. 1:13-CV-4179-TCB, 2014 WL 11460362, at *3 (N.D. Ga. Nov. 6, 2014), aff'd in part, remanded in part, 598 F. App'x 900 (11th Cir. 2015).

**C. Attorney's Fees**

Lastly, the Plaintiff also seeks Attorney's Fees pursuant to O.C.G.A. § 13-1-11. In order to enforce a provision providing for attorney's fees, a lender must first notify a guarantor that it plans on enforcing the provision, and the guarantor then has ten days to pay off the principal and interest without incurring attorney's fees.[34] Once this condition has been satisfied, payment of attorney's fees becomes "mandatory."[35] BB&T notified Cooke of its intention to seek attorney's fees in the Complaint, and gave Cooke the required ten days from service to be able to pay off the principal and interest. Cooke did not do so. As such, BB&T is entitled to attorney's fees.

The Guaranty provides for "reasonable" attorney's fees,[36] which § 13-1-11 states "shall be construed to mean 15 percent of the first $500.00 of principal and interest owing on such note or other evidence of indebtedness and 10 percent of the amount of principal and interest owing thereon in excess of $500.00."[37] Thus, BB&T is owed attorney's fees equal to $98,664.00 (($563,450.00 principal + $422,940.03 interest - $500) x .10 + $500.00 x .015), plus *per diem* interest in the amount of $8.217

---

[34] O.C.G.A. § 13-1-11(a)(3).

[35] Austin v. Bank of Am., N.A., 293 Ga. 42, 51 (2013).

[36] See Guaranty, Compl. Ex. B, at 2 [Doc. 1-2].

[37] O.C.G.A. § 13-1-11(a)(2).

from June 3, 2017 until the date of this Order ($82.17 *per diem* damages interest x .10).

## IV. Conclusion

For the foregoing reasons, the BB&T's Motion for Summary Judgment [Doc. 22] is GRANTED, and Cooke's Motion to Strike Certain Portions of the Declaration of La'Torrie Williams [Doc. 25] is DENIED. The Clerk is hereby directed to enter a judgment in favor of the Plaintiff for $991,884.37 plus $82.17 *per diem* from June 3, 2017 until the date of this Order in damages, and $98,664.00 plus $8.217 *per diem* from June 3, 2017 until the date of this Order in attorney's fees.

SO ORDERED, this 15 day of September, 2017.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge